| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

UNITED STATES OF AMERICA § 
§
*versus* § CASE NO. 4:09-CR-39 (1)
§
WILLIAM ARRON HAMES §

**MEMORANDUM AND ORDER**

Pending before the court is Defendant William Arron Hames's ("Hames") *pro se* Motion to Reduce Sentence (#242), wherein Hames requests that the court reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Hames identifies the Coronavirus Disease 2019 ("COVID-19") as an extraordinary and compelling reason justifying a reduction in his sentence and/or his release from imprisonment. United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. The Government has filed a response in opposition to Hames's Motion to Reduce Sentence (#245). Also pending before the court is Hames's Motion for Appointment of Counsel (#243), wherein he seeks to have legal counsel appointed to represent him in his request under § 3582(c)(1)(A). Having considered the motions, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I. Background

On March 11, 2009, a federal grand jury in the Eastern District of Texas returned a single-count Indictment charging Hames and 7 codefendants with Conspiracy to Possess With Intent to Manufacture and Distribute Methamphetamine, Gamma Hydroxybutyrate ("GHB"), and 3,4 Methylenedioxy-methamphetamine ("MDMA"/"Ecstasy"), in violation of 21 U.S.C. § 846. According to his Presentence Investigation Report ("PSR"), Hames manufactured GHB in a

clandestine laboratory in his garage and served as the source of supply of methamphetamine for codefendants. Hames stipulated that at all time relevant to the Indictment, he possessed with intent to distribute at least 1.5 but less than 5 kilograms of methamphetamine or at least 150 but less than 500 grams of methamphetamine (actual). In addition, he was found responsible for 220.91 grams of marijuana, 28,162 milliliters of GHB, 52 tablets of alprazolam, and 26 tablets of diazepam. Pursuant to a non-binding plea agreement, Hames entered a plea of guilty as to Count One, and on January 29, 2010, he was sentenced to 315 months' imprisonment followed by 5 years' supervised release. Hames is currently housed at the Federal Correctional Institution in Seagoville, Texas.

## II.   Analysis

### A.   Appointment of Counsel

Hames requests the appointment of counsel to assist him in pursuing a reduction of his sentence under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Therefore, Hames is not entitled to the appointment of counsel to assist him with seeking a sentence reduction under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *United States v. Whitebird*, 55 F.3d 1007, 1010-11 (5th Cir. 1995) (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2,

2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Hames provides no basis to suggest that the appointment of counsel would help him obtain relief. He is literate, completed high school, served in the military, and submitted well-reasoned, albeit ultimately unsuccessful, motions. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Hames's motion for appointment of counsel (#243) is denied.

    B.    <u>Compassionate Release</u>

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

Here, Probation reports that on March 25, 2020, Hames submitted a request for compassionate release to the warden of the facility where he is housed. It appears the warden has

4

not responded to his request, and more than thirty days have lapsed. Thus, Hames appears to have complied with the exhaustion requirement before filing the instant motion; however, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Hames contends that he is eligible for compassionate release because of his age and his medical conditions.

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Hames's PSR, which was filed on January 29, 2010, he reported that he was healthy and did not have a history of serious health problems. In the instant motion, Hames states that he has a history of high blood pressure and high cholesterol and that he suffers from hip pain. Probation reports that BOP officials acknowledge that Hames has "a history of hypertension and hyperlipidemia," but that both conditions are controlled with medication and Hames is medically stable. This medical summary does not meet the criteria set forth in USSG § 1B1.13, Application Note 1(A). None of Hames's medical conditions is terminal or substantially diminishes his ability to provide self-care.

The USSG further provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, cmt. n.1(B). Here, although Hames is 71 years old and has served more than 10 years of his term of imprisonment, there is no indication that he is experiencing a serious deterioration in his physical or mental health. Accordingly, Hames has failed to establish that he has a qualifying medical condition and does not meet the requirements for age-related compassionate release stated.

Hames's request for compassionate release potentially falls into the fourth catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Hames maintains that he has an "increased risk of complications and death should he contract COVID-19." Although Hames expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). In fact, Probation reports that no inmates have tested positive and only one staff member has tested positive for COVID-19 at the facility where he is housed. Hence, Hames has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence or release him from confinement.

Hames notes that the BOP has classified his security level as "low" and that he also has a low recidivism risk level under the PATTERN assessment tool. Yet, Hames has an extensive criminal history including prior convictions for sale of LSD, aggravated manufacture of a controlled substance (3), and use of a communication facility to facilitate drug trafficking. Hames was on parole at the time of his offense of conviction, and he has a history of poly-substance abuse. During a search of his residence, authorities discovered a clandestine GHB laboratory and recovered a dangerous weapon as well as significant amounts of a variety of illegal drugs. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). Therefore, in view of the circumstances of this offense and his extensive criminal history, the court cannot conclude that Hames would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 4,452 inmates on home confinement. Probation reports, however, that Hames was denied home confinement placement by BOP officials on May 14, 2020. The March 2020 directive is limited to "eligible at-risk inmates who are

non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Hames's track record is similarly a poor one.

In short, Hames has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id*.

III.   Conclusion

In accordance with the foregoing analysis, Hames's Motions (#s 242, 243) are DENIED.

SIGNED at Beaumont, Texas, this 19th day of June, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE